**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. _____**

**CLASS ACTION**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

       Plaintiff,

v.

UNITED AUTOMOBILE INSURANCE
COMPANY, a Florida profit corporation,

       Defendant.

_____/

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiff, MSP Recovery Claims Series, LLC ("**Plaintiff**"), on behalf of themselves and all others similarly situated, brings this action against United Automobile Insurance Company, a Florida profit corporation ("**Defendant**"), and state as follows:

## <u>INTRODUCTION</u>

1.      Defendant has systematically and uniformly failed to honor its primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "**MSP Law**"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "**accident-related medical expenses**") that should have been paid by Defendant but, instead, were paid by Medicare and/or Medicare Advantage Organizations ("**MAOs**"). As a result, the cost of those accident-related medical expenses have been borne by Medicare and MAOs to the detriment of the Medicare fund and the public.

2.      More specifically, Defendant is an auto or other liability insurer that provides either no-fault or med-pay insurance to its customers, including Medicare beneficiaries. Pursuant to its contractual obligations with its enrollees, and under state law, Defendant is to provide coverage for its enrollees' accident-related medical expenses without regard for whether the enrollee was at fault for the accident, or on a "no-fault" basis. In the case of automobile and other accidents specifically involving Medicare beneficiaries, Defendant is considered a primary plan under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same). Accordingly, Defendant's obligations to pay for accident-related medical expenses on behalf of Medicare beneficiaries is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendant has systematically failed to

make these payments and has, instead, passed on those expenses to Medicare.

3.      Plaintiff's assignor is an MAO that provides Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MAOs provide such services pursuant to contracts with CMS in connection with which CMS pays the MAOs a fixed fee per enrollee and the MAOs provide, at a minimum, the same benefits to Medicare beneficiaries enrolled under Part C of the Medicare Act ("**Enrollees**") would receive under traditional Medicare. MAOs stand in the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from the rightful primary payer if it pays for a service that fell within overlapping insurance maintained by Enrollees with a primary payer.

4.      The overriding purpose of the MSP Law is to ensure that Medicare and MAOs do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers such as Defendant. Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold their end of the bargain and pay the medical expenses associated with any accident-related injuries and/or treatments and, therefore, Medicare and MAOs, which are otherwise required to conditionally pay such accident-related medical expenses promptly with the expectation that they will be reimbursed by a primary payer that should have paid such expenses, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.      In addition to their obligation to pay for, and/or reimburse to Medicare and MAOs, accident-related medical expenses on behalf of their enrollees, primary payers like Defendant have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer

responsibility to the Centers for Medicare and Medicaid Services ("**CMS**").

6.      Even in the face of the MSP Law's clear legal requirement that primary payers like Defendant pay for accident-related medical expenses, take steps to identify whether their enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS, they rarely honor their obligations and, instead, take drastic steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MAOs and not primary payers.

7.      Further, when contacted by secondary payers such as Plaintiff's assignor, and even Plaintiff, to coordinate benefits as contemplated by the regulations promulgated under the MSP Law, primary payers like Defendant stonewall such coordination efforts and hide the ball in order to avoid their primary payer obligations.

8.      In large part, the deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Law by Defendant, and primary payers in general, has been successful in its primary objective – *i.e.*, to pass on accident-related medical expenses to Medicare and MAOs, including Plaintiff's assignor and the Class Members.

9.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or MAOs and providing for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

10.      Plaintiff utilizes a proprietary system that matches the health care claims data from its assignors to the publicly available reporting data from CMS and police crash reports available in limited jurisdictions, as well as the claims data made available by primary payers like Defendant, either voluntarily through a coordination of benefits process that primary payers ordinarily

stonewall or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendant fail to honor their obligations under the MSP Law.

11.     Using its proprietary system, Plaintiff can identify actual cost-savings for its MAO assignors and, ultimately, Medicare, that were not previously possible. As described in detail below, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

12.     This action seeks redress for Defendant's flagrant and systematic failure to comply with the MSP Law.

## NATURE OF THE ACTION

13.     This is a class action lawsuit under the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional payments made by Plaintiff's assignors and the Class Members on behalf of Enrollees for accident-related medical expenses that it was obligated to pay for in the first instance under a "no-fault" insurance policy.

14.     Defendant's liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendant is obligated to pay for the specific accident-related medical expenses in the first instance under a "no-fault" insurance policy; or (ii) where Defendant has entered into settlement agreements with Medicare beneficiaries as a result of claims arising

under liability insurance policies[1] issued by Defendant.

15.     On behalf of itself and the Class Members, Plaintiff seeks, *inter alia*, double damages under the MSP Law's private cause of action for Defendant's failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period.

16.     Defendant has failed to fulfill statutory duties as a "no-fault" insurer." Specifically, Defendant has systematically and uniformly failed to pay or reimburse conditional payments by the Plaintiff and Class Members on behalf of Enrollees for accident-related medical expenses that should have been covered by Defendant. The Enrollees are Medicare beneficiaries who were enrolled in Medicare Advantage health plans offered or managed by Plaintiff's assignor and Class Members, all of which are MAOs. Plaintiff's assignor and the Class Members suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

17.     Plaintiff's assignor and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, the Enrollees suffered injuries related to an accident in connection with which Plaintiff's assignor and the putative Class Members paid for accident-related medical expenses.[2] Because the Enrollees were also covered by no-fault policies issued by Defendant, Defendant is the primary payer under the MSP Law and either should have paid the

---

[1] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).

[2] MAOs are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendant. MAOs cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MAOs, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

accident-related medical expenses or should have reimbursed Plaintiff and the putative Class Members for the conditional payments they made.

18.     Rather than honor its obligations under the MSP Law, Defendant systematically and deliberately takes steps to avoid having to pay the accident-related medical expenses paid by Plaintiff's assignor and the Class Members on behalf of the Enrollees. These steps include failing to report its primary payer responsibility to CMS. Moreover, Defendant fails to coordinate benefits with MAOs, including specifically with Plaintiff on behalf of Plaintiff's assignor.

19.     Defendant's deliberate non-compliance with its reporting requirements under the MSP Law and refusal to coordinate benefits with MAOs is designed to avoid detection as the primary payer responsible for the accident-related medical expenses incurred by the Enrollees and, ultimately, avoid having to pay or reimburse conditional payments for such accident-related medical expenses.

20.     Upon information and belief, Defendant has failed to report its primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's assignor for accident-related medical expenses on behalf of their Enrollees, for which Defendant had a demonstrated responsibility under the MSP Law.

21.     Using its proprietary system, Plaintiff can identify actual cost-savings for its MAO assignors and, ultimately, Medicare, that were not previously possible. As described in detail below, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales*

*Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

22.     Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "**MSP System**"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[3] to identify claims where Defendant has failed to honor its primary payer responsibility on a class-wide basis.

23.     The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

24.     The MSP System captures data from different sources, including data acquired from outside sources like CMS and data found in publicly-available police crash reports, to identify conditional payments made by Plaintiff's assignors for their Enrollees' accident-related medical expenses, which should have been reimbursed by Defendant. This claims identification process can also be applied class-wide to the data obtained from Class Members.

25.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's assignor's EDI, Class Members' EDI and Defendant's EDI, to discover and identify conditional payments made by Plaintiff's assignor for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made

---

[3] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in **Appendix 1** to this Complaint. *See also* Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

by Defendant. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made by Defendant.

26.     Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendant. Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

27.     Plaintiff has identified at least 1,111 instances where Defendant admitted, by reporting to CMS, that it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's assignor in connection with accident-related medical expenses that Defendant should have paid or reimbursed. A list of such instances is attached hereto as **Exhibit A**.

28.     The instances include numerous instances where Defendant is also identified in police crash reports[4] as the insurer that was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's assignors in connection with accident-related medical expenses that Defendant should have paid or reimbursed.

29.     The MSP System also identifies numerous other instances in which Plaintiff's assignor made conditional payments on behalf of Enrollees for which the proper primary payer

---

[4] Police crash reports are only publicly available in a handful of jurisdictions, including Florida, Texas, Ohio and Connecticut.

cannot be identified because either (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law or (ii) police crash reports that would identify the appropriate primary payer are not available to Plaintiff in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiff's assignor's EDI with Defendant's EDI, however, would allow Plaintiff to identify with specificity those conditional payments for which Defendant should have paid the accident-related medical expenses and/or reimbursed Plaintiff's assignors for their conditional payments, but did not actually do so.

30.     Plaintiff has standing to assert claims for those specific exemplars identified in greater detail below, as well as for the greater universe of instances on which Defendant has failed to pay for accident-related expenses and/or reimburse conditional payments made by Plaintiff's assignor.

## PARTIES, JURISDICTION AND VENUE

31.     Plaintiff is a Delaware series limited liability company with a principal place of business located at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134. Plaintiff's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of Plaintiff.

32.     Plaintiff has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of Plaintiff and pursuant to Plaintiff's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by Plaintiff. Plaintiff may receive assignments in the name of Plaintiff and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the

Plaintiff will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by Plaintiff in its own name or it may elect to bring suit in the name of its designated series.

33.     Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series belong to Plaintiff.

34.     Series 17-03-615, is a designated series of MSP Recovery Claims, Series LLC with its principal place of business at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134.

35.     The Defendant is an insurance company that is authorized to and presently conducts business in the State of Florida.

36.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

37.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which the Defendant is domiciled.

38.     This Court has personal jurisdiction over Defendant because Defendant is at home in this forum, and personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

## **STANDING ALLEGATIONS**

39.     Plaintiff maintains the legal right to sue on behalf of each of its designated series LLCs. Specifically, pursuant to Plaintiff's limited liability agreement, as amended, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or

any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series.

Section 2 of Second Amendment of Limited Liability Company Agreement of MSP Recovery Claims, Series LLC (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added). As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the Assignors that should have been paid, in the first instance, by Defendant.

40.     On August 16, 2019, Avmed and Plaintiff entered into an Assignment agreement (the "**Assignment**").  See Assignment attached as **Exhibit B.**

41.     Pursuant to the Assignment, Avmed assigned to Plaintiff its right, title, interest in and ownership of the following assigned claims:

legal and equitable rights to seek reimbursement, recovery payments and/or seek damages … [which] arise from state and/or federal laws, including any subrogation recovery rights inuring to the benefit of Assignor and/or health plan members arising from any evidences of coverages or other rights based on common law, statutory rights or administrative remedies or any other rights whatsoever, that provide for the reimbursement by third parties of, including but not limited to, (i) conditional payments or any payment made of whatever nature by Assignor, whether under Parts A, B and D of the Medicare Act, including pursuant to a Medicare Advantage Plan, and (ii) all outstanding liens, potential liens, lien rights and subrogation rights in favor of Assignor against recoveries by enrollees, including in any litigation, such as but not limited to mass tort actions, class actions and multi-district litigation for which a primary payer has demonstrated responsibility, or to which it is otherwise entitled to collect pursuant to any state or federal law regardless of whether the claims asserted are pursued against a primary payer or any person or entity whatsoever whether designated as a primary payer or otherwise (collectively, "Claims").

*See* Ex. B at Sect. B and D.

42.     Each of the individual claims set forth herein has been assigned to Plaintiff. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to bring this cause of action.

43.     The allegations set forth herein plainly demonstrate that Plaintiff's assignor suffered damages as a direct result of Defendant's individual failure to reimburse conditional payments as required under the MSP Law.

44.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

45.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

46.     Once an MAO (or Medicare Payer) makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

47.     The items and services received by and paid on behalf of Plaintiff's assignor's Enrollees, including W.T. and W.M. below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

48.     By way of example, Plaintiff sets forth the exemplars below to illustrate Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In each of these cases, Defendant has reported and admitted its primary payer responsibility for the accident-related medical expenses for medical items and/or services provided to the Enrollees within ten (10) days of the accident and for which Plaintiff's assignor(s) made conditional

payments.

**The Exemplar Claims**

***The* W.T. *Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Meet its Reimbursement Obligations under the MSP Law***

49.     On January 11, 2017, W.T. was enrolled in a Medicare Advantage plan issued and administered by Avmed, Inc. a Florida corporation d/b/a Avmed Health Plans and Avmed Medicare ("**Avmed**"). Avmed is a MAO.

50.     On January 11, 2017, W.T. was injured in an accident.  At the time of the accident, W.T.'s accident-related medical costs and expenses were also covered under a no-fault policy issued by Defendant.  By virtue of its no-fault policy Defendant was contractually obligated to pay and provide primary coverage for W.T.'s accident-related medical expenses.

51.     A list of the diagnosis codes and injuries assigned to W.T. in connection with W.T.'s accident-related treatment is attached hereto as **Exhibt C**.

52.     The medical providers subsequently issued bills for payment of the accident-related medical expenses to W.T.'s MAO, Avmed.

53.     As W.T.'s MAO, Avmed was fully responsible for all medical expenses incurred by W.T. Avmed paid $509.32 for W.T.'s accident-related medical expenses.  The medical provider actually billed and charged Avmed $1,921.00 for W.T.'s accident-related medical expenses.

54.     Defendant is liable to pay this amount because it was W.T.'s primary payer by virtue of a no-fault insurance policy which covered W.T. for the accident-related medical expenses detailed herein.

55.     In fact, Defendant reported and admitted to CMS that it was the primary payer for W.T., including information regarding the accident, the name of the reporting entity, and the type

of insurance policy involved.[5]

56.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Avmed. A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit A**.[6] Despite Defendant reporting that it was a primary payer, and the corresponding admission that it should have paid for W.T.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

57.    Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse Avmed's conditional payment for W.T.'s accident-related expenses.

### The W.M. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Meet its Reimbursement Obligations under the MSP Law

58.    On December 3, 2016, W.M. was enrolled in a Medicare Advantage plan issued and administered by Avmed.

59.    On December 3, 2016, W.M. was injured in an accident.  At the time of the accident, W.M.'s accident-related medical costs and expenses were also covered under a no-fault policy issued by Defendant.  By virtue of its no-fault policy Defendant was contractually obligated to pay and provide primary coverage for W.M.'s accident-related medical expenses.

60.    A list of the diagnosis codes and injuries assigned to W.M. in connection with

---

[5] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendant chose to report.

[6] Plaintiff has identified instances where Defendant admitted it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees.  A list of such instances is attached hereto as **Exhibit A**.

W.M.'s accident-related treatment is attached hereto as **Exhibt D**.

61.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to W.M.'s MAO, Avmed.

62.    As W.M.'s MAO, Avmed was fully responsible for all medical expenses incurred by W.M. Avmed paid $92.75 for W.M.'s accident-related medical expenses.  The medical provider actually billed and charged Avmed $1,234.76 for W.M.'s accident-related medical expenses.

63.    Defendant is liable to pay this amount because it was W.M.'s primary payer by virtue of a no-fault insurance policy which covered W.M. for the accident-related medical expenses detailed herein.

64.    In fact, Defendant reported and admitted to CMS that it was the primary payer for W.M., including information regarding the accident, the name of the reporting entity, and the type of insurance policy involved.[7]

65.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse Avmed. A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit A**.[8] Despite Defendant reporting that it was a primary payer, and the corresponding admission that it should have paid for W.M.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

---

[7] Plaintiff obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendant, not the Plaintiff. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendant chose to report.

[8] Plaintiff has identified instances where Defendant admitted it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees.  A list of such instances is attached hereto as **Exhibit A**.

66.     Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse Avmed's conditional payment for W.M.'s accident-related expenses.

## CLASS ALLEGATIONS

67.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related medical expenses, when Defendant should have made those payments as primary payer and should have reimbursed the Class Members.

68.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiff , as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case, thus, is well suited for class-wide resolution.

69.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff  and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

70.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

a. **<u>Numerosity</u>**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs and first tier entities (including its assignees) throughout the United States who were not reimbursed by Defendant under a policy which provided PIP or Med Pay coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

b. **<u>Commonality</u>**: Questions of law and fact are common to all members of the Class. Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendant failed to make reimbursement payments, and report their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with their statutory duty to pay or reimburse the assignors pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share

the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff , like the Class Members, have a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff  and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **Adequacy**: Plaintiff  will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff  and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **Ascertainability**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities would could be accomplished by direct communication.

71.     The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("**Damages Class**"). Defendant, whether deliberately or not, failed to make required payments under the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff , thus depriving Plaintiff , as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

72.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

73.     Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action

because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

74.     Administering the proposed Damages Class will be relatively simple. Defendant provided no-fault policies with claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff  can determine which of the policy holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made.

## CLASS DEFINITION

75.     The putative class (hereinafter referred to as "Class Members") is defined as:

### Contractual Obligations Class

All Medicare Advantage Organizations (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations (or their assignees) for the items and services that were provided related to the claims of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

76.     All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

## CAUSES OF ACTION

77.     Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues liability insurance policies and is thus a primary payer liable under the MSP Law.

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

78.     Plaintiff incorporates by reference paragraphs 1 through 76 of this Complaint.

79.     Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated parties.

80.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendant's status as a primary plan; (2) the Defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

81.     Defendant's no-fault policies are primary plans, which rendered the Defendant a primary payer for accident-related medical expenses.

82.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignors paid for items and services which were also covered by no-fault policies issued by Defendant.

83.     More specifically, Plaintiff's and the Class Members' Medicare beneficiaries were also covered by no-fault, PIP, or medical payments policies issued by the Defendant.

84.     Because the Defendant is a primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Law.

85.     Defendant was required to timely reimburse the assignor for their conditional

payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

86.     Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

87.     Defendant has derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of Plaintiff's assignor and the Class members.

88.     In this case, Defendant failed to administratively appeal the assignors' rights to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

89.     Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## COUNT II
## Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

90.     Plaintiff incorporates by reference paragraphs 1 through 76 of this Complaint.

91.     The assignors are subrogated to the right to recover primary payment from Defendant for the Defendant's breach of contract with their insured, pursuant to the MSP Law. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation. This obligation was, instead, fulfilled by the Plaintiff and other Class Members. Under the MSP Law, Plaintiff is permitted to subrogate the enrollee/insured's right of action against the Defendant. *See* 42 C.F.R. § 411.26.

92.     Plaintiff complied with any conditions precedent to the institution of this action, to the extent applicable.

93.     Defendant failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by its contractual obligations.

94.     Defendant failed to pay each enrollee's covered losses, and Defendant had no reasonable proof to establish that it was not responsible for the payment.

95.     Defendant's failure to pay the medical services and/or items damaged Plaintiff and the Class Members as set forth herein. Plaintiff and the Class Members processed and paid accident-related medical expenses and are entitled to recover up to the statutory policy limits for each of the Enrollees' medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## **JURY TRIAL DEMAND**

96.     Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

  a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

  b.  designate Plaintiff as representative for the respective Class Members and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

  c.  issue a judgment against Defendant that:

      i.   grants Plaintiff  and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

    ii.       grants Plaintiff and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

    iii.      grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

    iv.      grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 27, 2020

Respectfully Submitted,

KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE P.L.
*Co-Counsel for Plaintiff*
201 S Biscayne Blvd #2700
Miami, FL 33131

By: *Steve I. Silverman*
    Steve I. Silverman
    ssilverman@klugerkaplan.com

and

MSP RECOVERY LAW FIRM
*Counsel for Plaintiff*
2701 S. Le Jeune Road, 10th Floor
Coral Gables, Florida 33134
John H. Ruiz
jruiz@msprecoverylawfirm.com
Frank C. Quesada
fquesada@msprecovery.com

## <u>APPENDIX 1</u>

### CMS' Standard for Storing Digital Health Insurance Claims Data

1.    It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

    a.    The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

    b.    The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

    c.    Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.    Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a.    <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i.    According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.[9]

ii.  The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[10], 2011[11], 2012[12], 2013[13], 2014[14], and 2016.[15]

iii.  CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[16]

---

[9] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[12] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[13] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[14] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[15] Medicare Plan Payment Group Enterprise Systems Solutions Group Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[16] CMS.gov. Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

iv.  The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v.  In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b.  <u>Medical Diagnosis and Procedure Codes</u>:

i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[17][18]

---

[17] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[18] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

   ii.   International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

   iii.   Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

   iv.   Current Procedural Terminology ("CPT") - CPT[19] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[20]

   v.   Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and

---

[19] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[20] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

similar costs.[21]

vi. Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[22]

vii. The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. See 45 C.F.R. 162.1002.

---

[21] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[22] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.