# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC,** a Delaware series limited liability company,<br><br>    **Plaintiff,**<br>**v.**<br><br>**UNITED AUTOMOBILE INSURANCE COMPANY, a Florida profit corporation,**<br><br>    **Defendant.** | **Case No.: 1:20-cv-20887-CMA**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff, MSP Recovery Claims, Series LLC ("Plaintiff"), on behalf of itself and all others similarly situated (the "Class Members"), brings this action against United Automobile Insurance Company ("Defendant"), and alleges:

### INTRODUCTION

1.      Defendant has systematically and uniformly failed to honor its primary payer obligation under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "MSP Law"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendant but, instead, were paid by Medicare and/or Medicare Advantage Plans, which include Medicare Advantage Organizations, as well as first tier and downstream entities ("MA Plans"). As a result, the cost of those accident-related medical expenses has been borne by Medicare and MA Plans to the detriment of the Medicare Trust Funds and the public.

2.      More specifically, Defendant is auto or other liability insurers that provides either no-fault or med-pay insurance to their customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees"). Pursuant to their contractual obligations with their insureds, and under state law, Defendant is to provide coverage for its insureds' accident-related medical expenses on a "no-fault" basis (in other words, without regard for whether the insured was at fault for the accident). In the case of automobile and other accidents specifically involving Enrollees of MA Plans, Defendant is considered primary plans under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same). Accordingly, Defendant's obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendant has systematically failed to make these payments and reimbursements, passing on those expenses to Medicare and MA Plans.

3.      Plaintiff's assignor is a MA Plan that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MA Plans provide such services pursuant to contracts with the Centers for Medicare & Medicaid Services ("CMS") in which CMS pays the MA Plans a fixed fee per enrollee and the MA Plans provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MA Plans stand in the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from rightful primary payers if they pay for services that fell within overlapping insurance maintained by Enrollees with a primary payer.

4.      The overriding purpose of the MSP Law is to ensure that Medicare and MA Plans do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers such as Defendant.[1] Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Therefore, Medicare and MA Plans, which are otherwise required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.      In addition to their obligation to pay for, and/or reimburse Medicare and MA Plans, accident-related medical expenses on behalf of their enrollees, primary payers like Defendant have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer responsibility to CMS.

6.      Even in the face of the MSP Law's clear legal requirement that primary payers like Defendant pay for accident-related medical expenses, take steps to identify whether their enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS,[2] they rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MA Plans.

7.      In large part, Defendant's deliberate and systematic avoidance of payment and/or

---

[1] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

[2] *Id.*

reimbursement obligations under the MSP Law has been successful in its primary objective—to pass on accident-related medical expenses to Medicare and MA Plans, including Plaintiff's assignor and the Class Members.

8.     To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by Medicare or MA Plans, and provided for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

9.     Plaintiff utilizes a proprietary system that matches the health care claims data from its assignor to the publicly available reporting data from CMS, Insurance Services Office ("ISO"), police crash and incident reports available in limited jurisdictions, and claims data made available by primary payers like Defendant, either voluntarily through a coordination of benefits process that primary payers ordinarily stonewall or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendant fail to honor their obligations under the MSP Law.

10.    As described in detail below, Plaintiff's assignor and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

11.     This action seeks redress for Defendant's flagrant and systematic failure to comply with the MSP Law.

**PARTIES,[3] JURISDICTION AND VENUE**

12.     Plaintiff is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134. Plaintiff's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of Plaintiff. All designated Series have their principal place of business at 2701 S. Le Jeune Road, 10th Floor in Coral Gables, Florida.

13.     Plaintiff has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated series form a part of Plaintiff and pursuant to Plaintiff's limited liability agreement and applicable amendment(s), each designated series is owned and controlled by Plaintiff. Plaintiff may receive assignments in the name of Plaintiff, and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, Plaintiff maintains the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by Plaintiff

---

[3] Plaintiff has made a good faith effort to accurately identify the Defendant and has relied on information obtained from Defendant's website, annual filings, police crash and incident reports, and reporting data from ISO and a vendor called MyAbility. MyAbility is one of sixteen (16) CMS-authorized vendors that allow companies, such as Plaintiffs, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. The reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by Defendant, not Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the manner in which Defendant chose to report.

5

in its own name or it may elect to bring suit in the name of its designated series.

14.     Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to Plaintiff.

15.     Series 17-03-615 is a designated series of Plaintiff with its principal place of business at 2701 S. Lejeune Rd., 10th Floor, Coral Gables, FL 33134.

16.     Defendant is a company that issues property and casualty policies, with its principal place of business at 1313 Northwest 167th Street, Miami Gardens, FL 33169.

17.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  At least one member of the class is a citizen of a different state than the Defendant and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

18.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b), (c), and (d) because at all times material hereto, Defendant resided, transacted business, was found, or had agents in this District, and a substantial portion of the alleged activity affecting trade and commerce discussed below has been carried out in this District.

20.     This Court has personal jurisdiction over Defendant because Defendant is at home in this forum, and personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

## **GENERAL ALLEGATIONS**

21.     This is a class action lawsuit under the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional payments made by Plaintiff's assignor and the Class Members on behalf of Enrollees for accident-related medical expenses.

22.     Defendant's liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendant is obligated to pay for the Enrollees' accident-related medical expenses in the first instance under a "no-fault" coverage liability policy, which include but are not limited to PIP or medical payment policies (collectively "no-fault policy"); or (ii) where Defendant has entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies[4] issued by Defendant.

23.     On behalf of itself and the Class Members, Plaintiff seeks, *inter alia*, double damages under the MSP Law's private cause of action for Defendant's failure to properly reimburse Plaintiff's assignor's and the Class Members' conditional payments for Enrollees' accident-related medical expenses.

24.     Defendant has failed to fulfill statutory duties as "no-fault" insurers. Specifically, Defendant has systematically and uniformly failed to pay or reimburse conditional payments by Plaintiff's assignor and Class Members on behalf of Enrollees for accident-related medical expenses. Enrollees are Medicare beneficiaries who were enrolled in a MA Plan offered or managed by Plaintiff's assignor and Class Members, all of which are MA Plans. Plaintiff's assignor and the Class Members suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

25.     Plaintiff's assignor and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, Enrollees suffered injuries in connection with an accident, and Plaintiff's assignor and the putative Class Members paid for accident-related medical

---

[4] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).

expenses.[5] Because Enrollees were also covered by no-fault policies issued by Defendant, Defendant is a primary payer under the MSP Law and either should have paid the accident-related medical expenses directly or should have reimbursed Plaintiff's assignor and the putative Class Members for the conditional payments they made.

26.     Rather than honor its obligation under the MSP Law, Defendant systematically and deliberately took steps to avoid paying or reimbursing the accident-related medical expenses paid by Plaintiff's assignor and the Class Members on behalf of Enrollees. These steps include failing to report its primary payer responsibility to CMS and failing to coordinate benefits[6] with MA Plans, including specifically with Plaintiff on behalf of Plaintiff's assignor.

27.     Defendant's deliberate non-compliance with reporting requirements under the MSP Law and refusal to coordinate benefits with MA Plans is designed to avoid detection as the primary payer responsible for Enrollees' accident-related medical expenses, ultimately allowing Defendant to avoid its obligations as primary payer. This underreporting/misreporting to CMS regarding payments and beneficiaries is systematic.

28.     Upon information and belief, Defendant has failed to report its primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's assignor for accident-related medical expenses on behalf of their Enrollees, for which

---

[5] MA Plans are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendant. MA Plans cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MA Plans, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[6] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

Defendant has a demonstrated responsibility to pay under the MSP Law.

29.     As described in detail herein, Plaintiff's assignor and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

30.     Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "MSP System"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[7] to identify claims where Defendant has failed to honor its primary payer responsibilities on a class-wide basis.

31.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

32.     The MSP System captures data from different sources, including CMS and publicly-available police crash and incident reports, to identify unreimbursed conditional

---

[7] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix 1 to this Complaint. *See also* Centers for Medicare and Medicaid Services, Medicare Learning Network, Medicare Billing: Form CMS-1500 and the 837 Professional (July 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

payments made by Plaintiff's assignor for its Enrollees' accident-related medical expenses for which Defendant is responsible as the primary payer. This claims identification process can also be applied class-wide to the data obtained from Class Members. The claims identified by the MSP System are but a fraction of the likely claims at issue in this case. The number and amount of these claims cannot be fully identified without discovery and matching of the parties' data.

33.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's assignor's EDI, Class Members' EDI and Defendant's EDI, to discover and identify unreimbursed conditional payments made by Plaintiff's assignor for accident-related medical expenses on behalf of their Enrollees for which Defendant is responsible as the primary payer. This data matching process can also be applied class-wide by matching Defendant's EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendant is responsible.

34.     Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's assignor made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendant. Plaintiff's assignor and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

35.     Plaintiff has identified numerous instances where Defendant admitted, by reporting to CMS, that it was obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of Enrollees. A sample list of such instances is attached hereto as **Exhibit A**. Again, this list is not complete, and discovery is needed to fully identify the scope of claims, beneficiaries, amounts, and assignors in this case.

36.     Plaintiff has also identified instances where Defendant is identified in police crash and incident reports[8] as the insurer contractually obligated (pursuant to no-fault policies) to provide primary payment on behalf of Enrollees for unreimbursed conditional payments made by Plaintiff's assignor in connection with accident-related medical expenses.

37.     The MSP System also identifies numerous other instances in which Plaintiff's assignor made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law, or (ii) police crash and incident reports that would identify the appropriate primary payer are not available to Plaintiff in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiff's assignor's EDI with Defendant's EDI, however, would allow Plaintiff to identify with specificity those unreimbursed conditional payments for accident-related medical expenses.

38.     Plaintiff has standing. To demonstrate standing, Plaintiff provides details below relating to specific exemplars; however, the claims identified in **Exhibit A** identify the greater universe of instances where Defendant has failed to pay and/or reimburse conditional payments made by Plaintiff's assignor for accident-related expenses and also confer standing upon Plaintiff.

39.     Plaintiff maintains the legal right to sue on behalf of each of its designated series LLCs.[9] Plaintiff's limited liability agreement and Delaware law provide that all rights arising from the assignment to its series LLCs, along with the right to bring any lawsuit in connection with said

---

[8] Police crash and incident reports are only publicly available in a handful of jurisdictions, including Connecticut, Florida, Georgia, Ohio and Texas.

[9] The assignment to Series 17-03-615 of Plaintiff for the exemplars used to establish standing is alleged in detail in this Complaint. However, Plaintiff seeks recovery on behalf of each of their assignors with claims against Defendant. All the assignments are valid and binding contracts and confer standing on Plaintiff to pursue the claims asserted herein.

assignment, belong to Plaintiff:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

Section 2 of the Second Amendment to the Limited Liability Company Operating Agreement of Plaintiff (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added). As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the assignor that should have been paid by Defendant in the first instance.[10]

40.     On August 16, 2019, Avmed, Inc. a Florida corporation d/b/a Avmed Health Plans and Avmed Medicare ("Avmed") and Plaintiff, through Plaintiff's designated series entity, entered into an Assignment agreement (the "**Assignment**").  *See* Assignment attached as **Exhibit C.**

41.     Pursuant to the Assignment, Avmed assigned to Plaintiff, through Plaintiff's designated series entity, its right, title, interest in and ownership of the following assigned claims:

> legal and equitable rights to seek reimbursement, recovery payments and/or seek damages … [which] arise from state and/or federal laws, including any subrogation recovery rights inuring to the benefit of Assignor and/or health plan members arising from any evidences of coverages or other rights based on common law, statutory rights or administrative remedies or any other rights whatsoever, that provide for the reimbursement by third parties

---

[10] A copy of the Plaintiff's limited liability company agreement, as amended, is attached here to as **Exhibit B**.

of, including but not limited to, (i) conditional payments or any payment made of whatever nature by Assignor, whether under Parts A, B and D of the Medicare Act, including pursuant to a Medicare Advantage Plan, and (ii) all outstanding liens, potential liens, lien rights and subrogation rights in favor of Assignor against recoveries by enrollees, including in any litigation, such as but not limited to mass tort actions, class actions and multi-district litigation for which a primary payer has demonstrated responsibility, or to which it is otherwise entitled to collect pursuant to any state or federal law regardless of whether the claims asserted are pursued against a primary payer or any person or entity whatsoever whether designated as a primary payer or otherwise (collectively, "Claims").

Ex. C at Sect. B; *see also* Sect. D.

42.    Each of the individual claims set forth herein has been assigned to Plaintiff, through Plaintiff's designated series entity. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to bring this cause of action.[11]

43.    The allegations set forth herein plainly demonstrate that Plaintiff's assignor suffered damages as a direct result of Defendant's individual failure to reimburse conditional payments as required under the MSP Law.

44.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

45.    Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service be "reasonable and necessary."

46.    Once a MA Plan makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

---

[11] Plaintiff's process for confirming that the exemplar claims are not excluded from the assigned claims is alleged in detail in this Complaint.

47.     The items and services received by and paid on behalf of Plaintiff's assignor's Enrollees, including the exemplar claims below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

48.     Plaintiff set forth the exemplars below to illustrate Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" and/or other liability insurer. Defendant has reported and admitted its primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees within ten (10) days of the accident and for which Plaintiff's assignor made conditional payments.

### The Exemplar No-Fault Claims

*The W.T. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Meet Its Reimbursement Obligations under the MSP Law*

49.     On January 11, 2017, W.T. was enrolled in a MA Plan issued and administered by Avmed.  Avmed is a MA Plan.

50.     On January 11, 2017, W.T. was injured in an accident. As a direct and proximate result of the accident, W.T. sustained injuries that required medical items and services.

51.     At the time of the accident, W.T.'s accident-related medical costs and expenses were covered under a no-fault policy issued by United Automobile Insurance Company under policy number UAD035265805. By virtue of its no-fault policy, Defendant, United Automobile Insurance Company, was contractually obligated to pay and provide primary coverage for W.T.'s accident-related medical expenses.

52.     A list of W.T.'s diagnosis codes and injuries in connection with W.T.'s accident-related treatment is attached hereto as **Exhibit D**.

53.     The medical services were rendered on January 11, 2017. The medical providers

subsequently issued to Avmed bills for payment of W.T.'s accident-related medical expenses.

54.     The medical providers billed and charged Avmed $1,921.00 for W.T.'s accident-related medical expenses, of which Avmed paid $509.32.

55.     Defendant is liable to pay the billed amount by virtue of its no-fault policy which covered W.T. for the accident-related medical expenses detailed herein, as set forth in the police crash report for W.T.'s auto accident hereto as **Exhibit E**.

56.     The crash report demonstrates that Defendant insured W.T. and was, therefore obligated to reimburse Avmed for W.T.'s medical expenses. Despite being identified as the primary payer with primary responsibility to make payment for W.T.'s accident-related medical expenses, Defendant did not report its primary payer responsibility to CMS and did not otherwise pay for W.T.'s accident-related medical expenses in the first instance or reimburse Avmed for such expenses.

57.     Notwithstanding such failure, Defendant is a primary payer responsible for payment and/or reimbursement of W.T.'s accident-related medical expenses.

58.     Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse Avmed's conditional payment for W.T.'s accident-related medical expenses.

### The W.M. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Meet Its Reimbursement Obligations under the MSP Law

59.     On December 3, 2016, W.M. was enrolled in a MA Plan issued and administered by Avmed. Avmed is a MA Plan.

60.     On December 3, 2016, W.M. was injured in an accident. As a direct and proximate result of the accident, W.M. sustained injuries that required medical items and services.

61.     At the time of the accident, W.M.'s accident-related medical costs and expenses were covered under a no-fault policy issued by United Automobile Insurance Company under policy number UAD030393909. By virtue of its no-fault policy, Defendant, United Automobile Insurance Company, was contractually obligated to pay and provide primary coverage for W.M.'s accident-related medical expenses.

62.     A list of W.M.'s diagnosis codes and injuries in connection with W.M.'s accident-related treatment is attached hereto as **Exhibit F**.

63.     The medical services were rendered on December 3, 2016. The medical providers subsequently issued to Avmed bills for payment of W.M.'s accident-related medical expenses.

64.     The medical providers billed and charged Avmed $1,234.76 for W.M.'s accident-related medical expenses, of which Avmed paid $92.75.

65.     Defendant is liable to pay the billed amount by virtue of a no-fault policy which covered W.M. for the accident-related medical expenses detailed herein, as set forth in the police crash report for W.M.'s auto accident hereto as **Exhibit G**.

66.     The crash report demonstrates that Defendant insured W.M. and was, therefore obligated to reimburse Avmed for W.M.'s medical expenses. Despite being identified as the primary payer with primary responsibility to make payment for W.M.'s accident-related medical expenses, Defendant did not report its primary payer responsibility to CMS and did not otherwise pay for W.M.'s accident-related medical expenses in the first instance or reimburse Avmed for such expenses.

67.     Notwithstanding such failure, Defendant is a primary payer responsible for payment and/or reimbursement of W.M.'s accident-related medical expenses.

68.     Accordingly, Plaintiff is entitled to collect double damages against Defendant for

its failure to reimburse Avmed's conditional payment for W.M.'s accident-related medical expenses.

## CLASS ACTION ALLEGATIONS

69.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related medical expenses, when Defendant should have made those payments as primary payer in the first instance or reimbursed the Class Members.

70.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money it was statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned its recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

71.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

72.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

a. **<u>Numerosity</u>**:   Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Plans and first tier entities (including their assignees) throughout the United States who were not reimbursed by Defendant under a no-fault policy which provided coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

b. **<u>Commonality</u>**:  Questions of law and fact are common to all members of the Class. Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendant failed to reimburse conditional payments, and report its Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with its statutory duty to pay or reimburse MA Plans pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representatives, Plaintiff possesses the

same interests and suffered the same injury as the other Class Members, thereby demonstrating a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payment for Enrollees' accident-related medical expenses, which it was obligated to do by its contractual obligations with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendant's failure to make primary payments or reimburse Plaintiff's assignor and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MA Plans, first tier entities, and downstream entities, and providing notice to such entities could be accomplished by direct communication.

73. The Class is properly brought and should be maintained as a class action under Rule

23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Contractual Obligations Class"). Defendant, whether deliberately or not, failed to make required payments under the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

74.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintain a reasonable methodology for generalized proof of class-wide impact using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

75.     Proceeding with a Contractual Obligations Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify

the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

76.     Administering the proposed Contractual Obligations Class will be relatively simple. Defendant provided no-fault and other liability policies to claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff can determine which policyholders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify unreimbursed payments made for accident-related medical expenses where Defendant was a primary payer.

## CLASS DEFINITION

77.     The putative class (referred to herein as "Class Members") is defined as:

### Contractual Obligations Class

All Medicare Advantage Plans (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Enrollees; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Plans (or their assignees) for the items and services that were provided related to the claims of the Medicare Enrollees;

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

78.     All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

## CAUSES OF ACTION

79.    Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues liability insurance policies and is, thus, a primary payer liable under the MSP Law.

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

80.    Plaintiff re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

81.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly situated parties.

82.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

83.    Defendant's no-fault and liability policies are primary plans, which rendered Defendant a primary payer for accident-related medical expenses.

84.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's assignor paid for items and services which were also covered by no-fault policies issued by Defendant.

85.    More specifically, Plaintiff's assignor's and the Class Members' Enrollees were also covered by no-fault policies issued by Defendant.

86.    Because Defendant is a primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Law.

87.     Defendant was required to timely reimburse Plaintiff's assignor and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

88.     Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

89.     Defendant has derived substantial profits by placing the burden of financing medical treatments for its policyholders on the shoulders of Plaintiff's assignor and the Class Members.

90.     In this case, Defendant failed to administratively appeal Plaintiff's assignor's rights to reimbursement within the administrative remedies period on a class-wide basis. Defendant, therefore, is time-barred from challenging the propriety of amounts paid.

91.     Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

## COUNT II
## <u>Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract</u>

92.     Plaintiff re-alleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

93.     Pursuant to the MSP Law, Plaintiff's assignor is subrogated to the right to recover unreimbursed conditional payments from Defendant for Defendant's breach of contract with its insured. Specifically, Defendant was contractually obligated to pay for medical expenses and items arising out of an accident, and Defendant failed to meet that obligation. This obligation was,

instead, fulfilled by Plaintiff's assignor and other Class Members. Under the MSP Law, Plaintiff

is permitted, standing in its assignor's shoes, to subrogate the Enrollee's/insured's right of action

against Defendant. *See* 42 C.F.R. § 411.26.

94.     Plaintiff complied with all conditions precedent to the filing of this action, to the

extent applicable.

95.     Defendant failed and/or refused to make complete payments for Enrollees'

accident-related expenses as required by its contractual obligations.

96.     Defendant failed to pay each Enrollee's covered losses, and Defendant has no

reasonable proof to establish that it was not a primary payer and, therefore, not responsible for the

payment.

97.     Defendant's failure to pay the medical services and/or items damaged Plaintiff and

the Class Members as set forth herein. Plaintiff and the Class Members processed and paid

accident-related medical expenses and are entitled to recover up to the statutory policy limits for

each Enrollee's medical expenses related to the subject accidents, pursuant to their agreements

with CMS and the provider of services.

## **JURY TRIAL DEMAND**

98.     Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members described

herein, prays for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action
    pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the
    respective Class;

b.  designate Plaintiff as representatives for the respective Class Members and
    Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c.   issue a judgment against Defendant that:

   i.   grants Plaintiff and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

   ii.   grants Plaintiff and the Class Members reimbursement of damages for those monies to which the Class is entitled pursuant to their direct right of recovery for breach of contract, as alleged in Count II;

   iii.   grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

   iv.   grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE P.L.
*Co-Counsel for Plaintiff*
201 S Biscayne Blvd #2700
Miami, FL 33131

By: *Steve I. Silverman*
Steve I. Silverman
ssilverman@klugerkaplan.com
Florida Bar No. 516831
Ryan Bollman
rbollman@klugerkaplan.com
Fla. Bar No. 93553
Mayda Z. Nahhas
mnahhas@klugerkaplan.com
Fla. Bar No. 1010798

and

MSP RECOVERY LAW FIRM
*Counsel for Plaintiff*
2701 S. Le Jeune Road, 10th Floor
Coral Gables, Florida 33134
John H. Ruiz
jruiz@msprecoverylawfirm.com
Fla. Bar No. 928150
Frank C. Quesada
fquesada@msprecovery.com
Fla. Bar No. 29411

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020 the foregoing was served via email on all counsel of

record listed in the attached service list.

*/s/ Steve I. Silverman*
Steve I. Silverman

## SERVICE LIST

**Valerie B. Greenberg, Esq.**
**Ari Gerstin, Esq.**
*Counsel for Defendant*
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone:      305-374-5600
Fax:                305-374-5095
Email:  valerie.greenberg@akerman.com
         ari.gerstin@akerman.com

## APPENDIX 1

### CMS' Standard for Storing Digital Health Insurance Claims Data

1.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

    a.   The 837 standard is mandated by the federal government and used federal and state payors such as Medicare and Medicaid.

    b.   The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

    c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.     Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a.   Dates (including dates of service): the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i.   According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.[12]

    ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[13], 2011[14], 2012[15], 2013[16], 2014[17], and 2016.[18]

    iii.  CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[19]

---

[12] *See* Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[13] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[14] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[15] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[16] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[17] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[18] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[19] Centers for Medicare & Medicaid Services, Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

  iv. The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

  v. In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

 b. <u>Medical Diagnosis and Procedure Codes</u>:

  i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[20][21]

---

[20] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[21] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information are reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

ii. International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

iii. Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") – CPT[22] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[23]

v. Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics

---

[22] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[23] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

and similar costs.[24]

  vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[25]

  vii. Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

  viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

  3. CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

[24] Centers for Medicare and Medicaid Services, Medicare Learning Network, Hospital Outpatient Prospective Payment System (Feb. 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[25] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.