UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MSP RECOVERY CLAIMS, SERIES LLC,

      Plaintiff,

v.

UNITED AUTOMOBILE INSURANCE
COMPANY,

      Defendant.

Case No.: 1:20-cv-20887-CMA

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S
## COUNSEL WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff, MSP Recovery Claims, Series LLC ("MSPRC"), respectfully moves this Court for an order disqualifying Defendant's counsel and the law firm of Akerman LLP ("Akerman") ("Akerman" or "Defense counsel"), from representing Defendant, United Automobile Insurance Company ("Defendant"), in this matter and an order staying this proceeding pending this Court's ruling on this Motion to Disqualify, as a result of a conflict of interest. In support thereof, Plaintiff states as follows:

## INTRODUCTION

Plaintiff commenced this action against Defendant for its systematic and uniform failure to honor its primary payer obligations under the Medicare Secondary Payer provisions of the Social Security Act (the "MSP Law"), 42 U.S.C. § 1395y et seq., by failing to reimburse medical items and services resulting from injuries sustained in automobile and other accidents ("accident-related treatment"). As the Eleventh Circuit has recognized, when this occurs, downstream health care providers can sue primary payers for nonpayment. *MSP Recovery Claims, Series, LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305 (11th Cir. 2020).[1]

*Ace* was an appeal of numerous dismissals from this District. Most of those cases were cases where Defense counsel argued to the district court that downstream providers had no

---

[1] Despite the ruling in *Ace*, Defense counsel continues to cite the old and inaccurate law. Indeed, in a recent Order, attached hereto as **Exhibit A**, Judge Cooke in the matter of *MSP Recovery Claims, Series, LLC et al. v. MGA Insurance Company, Inc*., Case No. 20-cv-21624, advised Defense counsel to refer to "current and accurate Eleventh Circuit law."

standing to sue under the private cause of action and that the multitude of cases as shown by the Plaintiff herein did not meet the pleading requirements. The Eleventh Circuit has recognized Defendant's constructive knowledge of its liability for every claim identified on the Amended Complaint's Exhibit A. [ECF No. 20-1]. Here, as in *Ace*,

> Plaintiffs alleged that they chose which claims to bring by comparing their assignors' claims data against two set of documents: Defendants' filing with HHS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report the claims for which they are primary payers, and certain of Defendants' settlement agreements to which [Plaintiffs] had access. The filings with HHS evidence Defendants' knowledge that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement. For the remaining claims, Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments.

*Ace*, 974 F.3d at 1319. Under identical circumstances, the Eleventh Circuit held that "Plaintiffs have plausibly alleged Defendants' actual or constructive knowledge," and rejected efforts to dismiss a similar action under Rule 12(b)(6). *Id.* Furthermore, *Ace* found that "[t]he language of § 1395y(b)(3)(A) . . . is easily read to cover downstream actors who have borne the cost of a conditional payment ***and thus have suffered damages***." *Ace*, 974 F.3d at 1314 (emphasis added). *Ace* held that "when a downstream actor bears the cost of an MAO's conditional payments, that downstream actor suffers an inquiry squarely within the ambit of the Medicare Secondary Payer Act." *Id.* at 1316. As such, downstream actors can bring suit for double damage against the primary payer. *See id.* The *Ace* court has foreclosed Defendant's argument. Plaintiff may seek reimbursement as a class of Medicare Advantage Organizations inclusive of their downstream entities. *See id.* at 1316.

In addition to those matters on appeal, numerous cases in this District, including this action, were stayed pending the outcome of *Ace*. [D.E. 35].  After *Ace*, this Court lifted the stay.  [D.E. 37]. In addition, following *Ace*, Plaintiff conducted an in-depth analysis of its claims data and identified hundreds of instances wherein Defense counsel represents both a first[2] and third-party

---

[2] First-party insurers in this context refers to no-fault insurance. That is, "insurance that pays for medical expenses for injuries sustained on the property or premises of the insured, or in the use, occupancy, or operation of an automobile, regardless of who may have been responsible for causing the accident. This insurance includes but is not limited to automobile, homeowners, and commercial plans. It is sometimes called 'medical payments coverage,' 'personal injury protection,' or 'medical expense coverage.'" 42 C.F.R. 411.50(b).

insurer[3] stemming from the same automobile accident involving the same Medicare beneficiary ("Enrollee") involved in the same exact accident involving a claim to the exact secondary payments[4] where both primary payers have adversarial positions.

Specifically, Plaintiff's research and investigation disclose a number of instances where: (i) Defendant reported its primary payer obligation under a first or third-party policy to the Centers for Medicare and Medicaid Services ("CMS") pursuant to Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("Section 111) or to the Insurance Services Office ("ISO"); (ii) another first or third-party insurer exists for the same instance involving the same Enrollee reported by Defendant; and (iii) that other insurer who was formerly or is currently also being represented by Akerman (herein after, the "Other Akerman Clients") on the identical accident where Plaintiff is seeking reimbursement for the identical amounts form two primary payers both represented by Defense counsel. It is a textbook case of un-waivable conflict of interest. The result is impermissible conflicts plainly violative of the Florida Bar's conflict of interest rules.

To date, Defense counsel has failed to provide a scintilla of evidence to rebut any of the conflicts. In fact, Plaintiff's counsel has requested copies of conflicts of interest waivers from Defense counsel on numerous occasions, but Defense counsel has been unresponsive. *See* attached hereto **Exhibit C**, Correspondence from Plaintiff's counsel seeking waiver.

## THE IRRECONCILABLE CONFLICTS

At the center of the parties' dispute here is the question of whether the reimbursements owed to Plaintiff should be covered by Defendant or by the Other Akerman Clients. Defendant will contend that the Other Akerman Clients as third-party insurers must reimburse Plaintiff for the accident-related treatment expenses at issue, whereas the Other Akerman Clients will allege that Defendant is in fact the responsible primary payer.  In other words, any time that Akerman advances an argument on behalf of one client, it would be taking a position contrary to another

---

[3] Third-party insurers in this context refers to liability insurance (including a self-insured plan) that provides payment based on legal liability for injury or illness or damage to property. It includes, but is not limited to, automobile liability insurance, uninsured motorists insurance, underinsured motorist insurance, homeowners' liability insurance, malpractice insurance, product liability insurance, and general casualty insurance. 42 C.F.R. 411.50(b).

[4] Attached hereto as **Exhibit B** is a list of third-party insurers that were previously or are presently being represented by Akerman involved in the same exact accident involving a claim to the exact secondary payments to the present controversy.

client's interests because if one insurance carrier pays less than the charged amount owed the other will inherently pay more, and vice versa. And as counsel for either party, Akerman has to take the position that it is not the first-party or third-party that must pay that it is one of their other clients.

Defense counsel began advising the Other Akerman Clients in or around March 2016. Defense counsel continues to advise the Other Akerman Clients. Defense counsel has advised the Other Akerman Clients as it pertains to compliance with the MSP Law generally, and also specifically as to the disposition of claims attached hereto and incorporated as **Exhibit D**. During this time, Akerman has, among other things:

- Drafted legal documents, such as pleadings, advancing arguments adverse to the interests of Defendant and in favor of its Other Akerman Clients;

- Reviewed the Other Akerman Clients' internal documents, such as payout logs, which contain confidential information adverse to the interests of Defendant and in favor of the Other Akerman Clients;

- Performed an in-depth analysis of the Other Akerman Clients' MSP liability;

- Attended hearings and settlement conferences on behalf of the Other Akerman Clients advocating for a position contrary to the interests of Defendant and in favor of its Other Akerman Clients; and

- Undertook a data matching protocol between the Farmers Insurance Company and its subsidiaries ("Farmers") and Plaintiff, identifying claims that are adverse to the interests of Defendant. Although Defense counsel had agreed to the Farmers data matching protocol in the past, Defense Counsel is now advising the Other Akerman Clients against the data matching protocol. Tellingly, the data matching protocol would in many instances exculpate one of the Other Akerman Clients from liability because it will ultimately show that another of the Other Akerman Clients is liable for that particular claim.[5]

The issues raised in this litigation are directly related to issues discussed during Akerman's representation of the Other Akerman Clients. Critically, a review of Section 111 reporting instances, ISO data, and crash reports, indicates that the arguments that Defense counsel is likely to advance on behalf of Defendant in this litigation are contrary to the interests of the Other Akerman Clients. Accordingly, Defense counsel should not be permitted to continue to represent Defendant, Akerman is conflicted and should be disqualified.

---

[5] *See MSP Recovery Claims Series LLC v. Farmers Insurance Exchange*, Case Nos. 2:17-cv-2522-PLA and 2:17-cv-2559-PLA, D.E. 265 (C.D. Cal. July 28, 2020); *see also* **Exhibit H**, Amended Special Master's Order RE Data Matching in *Farmers*

## FACTUAL BACKGROUND

Attached hereto as **Exhibit D** is a list of 2,797 instances where Defendant admitted by reporting to CMS or to ISO and/or appeared on a crash report that it was contractually obligated to provide primary payment on behalf of Enrollees for injuries sustained in an accident or injury that Defendant reported as having occurred. Included in the 2,797 instances are 876 Enrollees, listed on **Exhibit E** hereto, in connection with which Defense counsel represents both Defendant and a current or former Other Akerman Client stemming whose policies are implicated in the same automobile accident involving the same Enrollee.[6] In 706 of those instances implicate the primary policies of both the Defendant and another **current** Akerman Client. Additionally, there are 170 instances wherein Akerman represents Defendant and a **former** Akerman Client involving the same Enrollee.

For further illustration, for the claim of Enrollee W.G., Akerman represents Progressive Group of Insurance Companies ("Progressive"), the first-party insurer, as well as Defendant, the third-party insurer. Both insurance carriers have liability for items and services stemming from an automobile accident that occurred on January 30, 2013. Plaintiff was billed a total of $25,464.29 for the accident-related expenses for W.G., which were supposed to be paid at the outset by Defendant and/or Progressive. *See* Affidavit of Christopher Miranda, attached hereto as **Exhibit F**. However, Plaintiff was left to foot the bill for W.G.'s accident-related expenses. As described in the police report and ISO report attached hereto as **Exhibit G,** the vehicle insured by Defendant was at fault for rear ending W.G.'s vehicle. The instant the automobile accident occurred, the interests of Defendant and Progressive became adverse.

As a result of the conflict, both Progressive and Defendant have direct liability exposure for W.G.'s billed amount of $25,464.29. When Akerman raises any argument on behalf of Progressive, such as that Progressive exhausted benefits, or that notice was required pursuant to 627.736(10), or that the medical expenses are not covered under their policy, Akerman is shifting liability to the other client, the third-party insurer, Defendant. Defendant would be liable, as the

---

[6] Plaintiff is required to cross-reference the conflicted claims based on (not only the identified claims) but claims that are a part of the putative class. Plaintiff's database has approximately 3.4 million claims that can (at any time) rise to a conflict based on the data matched in ongoing cases that cause additional claimants to be identified and, as such, Plaintiff's review led to the identification of the current 876 in conflict. *See* **Exhibit E**. Additional claims may continue to illustrate additional conflicts as data matching in other proceedings continue.

third-party insurer, if a court rules in favor of Akerman's argument raised on behalf of Progressive, the first-party insurer.

In numerous cases, Defense counsel has persistently raised the same defense arguments in direct conflict with Akerman Clients. If any court rules in Akerman's favor on the defenses raised on behalf of the first-party defendant, the third-party defendant (also represented by Akerman) would be adversely affected such that the third-party defendant would be adjudicated liable for the full billed amount for the same claimant at issue. Akerman has argued, in this case, and in other cases representing the Other Akerman Clients, that "Plaintiff fails to allege that it served on Defendant the statutorily required pre-suit demand letter under Fla. Stat. § 627.736(10)." [ECF No. 49, at 5]; *MSP Recovery Claims, Series LLC, et al. v. Nat'l Gen. Assurance Co., et al.*, Case No. 1:20-cv-24051-AMC, ECF No. 25, at 16-17 (S.D. Fla. Dec. 9, 2020) (raising pre-suit demand letter argument); *MSP Recovery Claims, Series LLC, et al. v. MGA Ins. Co., Inc.*, Case No. 1:20-cv-21624-MGC, ECF No. 54, at 14-15 (S.D. Fla. Jan. 21, 2021) (same); *MSP Recovery Claims, Series LLC, et al. v. Markel Amer. Ins. Co., et al.*, Case No. 1:20-cv-24063-AMC, ECF No. 29, at 15-16 (S.D. Fla. Dec. 9, 2020) (same); *MSP Recovery Claims, Series LLC, et al. v. Amer. Nat'l Gen. Ins. Co., et al.*, Case No. 1:20-cv-24077-CMA, ECF No. 24, at 16-17 (S.D. Fla. Dec. 29. 2020) (same). Akerman's arguments place the Other Akerman Clients that are third-party primary payers in direct conflict – Akerman often raises the argument that "Plaintiffs have not sufficiently traced any of their Assignors' purported injuries to any [d]efendant's conduct," and in doing so shifts liability to one of the Other Akerman Clients' overlapping primary policies. *MSP Recovery Claims, Series LLC, et al. v. Nat'l Continental Ins. Co., et al.*, Case No. 1:20-cv-24136-KMW, ECF No. 31, at 13 (S.D. Fla. Dec. 21, 2020); *Markel*, Case No. 1:20-cv-24063-AMC, ECF No. 29, at 4 (arguing that there are no "alleged injury in fact traceable to a particular Plaintiff and to a particular [d]efendant"). As such, any defense Akerman raises for the jointly represented Akerman Clients (which are first-party and third-party defendants) will adversely affect the other by shifting liability from a first-party defendant to a third-party defendant.

As counsel for the insurance company for W.G., Akerman must advise Progressive that, although it is a primary payer by way of its contract with W.G., Defendant is ultimately responsible for paying for the third-party insurance policy. Conversely, Akerman must advise Defendant, that Progressive must pay first, and properly exhaust benefits before any payment should be made by Defendant. In sum, if Progressive pays less then Defendant has to pay more and vice versa. This

example clearly highlights the irreconcilable conflict of issues that exist and that will continue to develop if Defense counsel continues to represent Defendant.

## LEGAL ARGUMENT AND MEMORANDUM OF LAW

A motion to disqualify counsel is the proper method for party-litigants to bring before the court issues of conflict of interest or breach of ethical duties. *See Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742, 744 (5th Cir. 1980); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the Former Fifth Circuit rendered prior to October 1, 1981).

The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. *In re: BellSouth Corp.,* 334 F.3d 941, 961 (11th Cir. 2003). When ruling on a motion to disqualify, a court must "be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Disqualification of a party's chosen counsel is granted when compelling reasons exist for doing so. *In re: BellSouth Corp*., 334 F.3d at 961.

Indeed, the need to ensure adherence to the highest ethical standards for professional responsibility has led Florida courts to use their inherent power to disqualify counsel where necessary to safeguard clients from conflicted attorneys, and the profession from the appearance of impropriety. *See BioMatrix Specialty Pharmacy, LLC v. Horizon Healthcare Servs., Inc.,* No. 18-61680-CIV, 2018 WL 6812842, at *5-6 (S.D. Fla. Dec. 27, 2018); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11- 80051-CIV, 2012 WL 12868734, at *4 (S.D. Fla. July 2, 2012), report and recommendation adopted, No. 11-80051, 2012 WL 12868735 (S.D. Fla. July 19, 2012); *Arnett v. Mid-Cont'l Cas. Co.,* No. 8:08-CV-2373-T-27EAJ, 2009 WL 10670499, at *2 (M.D. Fla. Nov. 19, 2009).

Where an alleged ethical violation exists, the district court must identify the applicable rule of professional conduct and determine whether the charged attorney violated that rule. *Schlumberger Tech., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). "Attorneys practicing in the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar." *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1345 (S.D. Fla. 2011). Accordingly, Comments to the Rules of Professional Conduct indicate that opposing counsel may request

disqualification. Thus, where a conflict "is such as clearly to call in question the fair and efficient administration of justice, opposing counsel may properly raise the question." Comment to Rule Regulating the Florida Bar 4-1.7.

## ARGUMENT

### A. Disqualification of Akerman Is Appropriate Pursuant to Rule 4-1.7, Florida Bar Rules of Professional Conduct

Rule 4-1.7 concerns conflicts of interests with current clients and provides that a lawyer shall not represent a client if:

> (1)    The representation of one client will be directly adverse to another client; or (2) there is a substantial risk that the representation of one or more clients will be materially limited to the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. R. Regulating Fla. Bar 4-1.7.

Rule 4-1.16(a)(1) states that unless a court orders otherwise, "a lawyer **shall not** represent a client or, where representation has commenced, **shall withdraw** from the representation of a client if … the representation will result in violation of the Rules of Professional Conduct or law." R. Regulating Fla. Bar 4-1.16(a)(1) (emphasis added).

The decision in *The Florida Bar v. Mastrilli*, 614 So. 2d 1081 (Fla. 1993), is particularly apposite, as it required disqualification of an attorney who filed suit against his own client in the same matter for which he had been retained. In that case, Mastrilli undertook representation of two women allegedly injured in an accident while one was the driver and one was the passenger in the same vehicle. Mastrilli issued demand letters on behalf of the passenger against the insurance carrier of the driver on grounds the latter had been negligent. The driver's insurance policy would cover only $50,000.00 of any loss. When the insurance company denied payment, Mastrilli then filed suit against the driver on behalf of the passenger. In effect, Mastrilli filed suit against his own client in the same matter for which he had been retained.

The Florida Supreme Court held that Mastrilli either knew or should have known of the conflict; and there was a potential that his actions would expose his client, the driver, to a personal liability of up to $50,000.00. *Id*. Accordingly, the Supreme Court suspended Mastrilli from the practice of law for a period of six months.

Like *Mastrilli*, the instant case involves Akerman's representation of two insurers, the Akerman Clients and Defendant, that are responsible for covering the same accident-related

treatment expenses that Plaintiff's Assignors incurred as a result of an accident, precluding dual representation, or more particularly, representation of Defendant. Plaintiff's claim against Defendant includes a violation of the MSP Law. Hence, ascertaining whether the Other Akerman Clients are responsible to pay for the accident-related treatment expenses Plaintiff's Assignors made on behalf of their Enrollees as a result of an accident is not only necessary but required under the MSP Law to determine Defendant's liability.

This Court reviewed a similar case, *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, 861 F. Supp. 2d 1346 (S.D. Fla. 2012), and granted a defendant's motion to disqualify the plaintiff's counsel and law firm. In *Bedoya*, the plaintiff's attorney inappropriately had ex parte communications with an officer of the defendant's company in connection with a court-ordered arbitration in another case, in violation of Florida Bar Rule 4-4.2. *Id.* at 1353. The plaintiff's attorney also had ex parte communications with the independent contractor that performed greeting work for the defendant's company, in order to review and sign an affidavit in support of the plaintiff's motion for conditional collective action certification, again in violation of Florida Bar Rule 4-4.2. *Id.* at 1361-62. This Court held that the "appropriate remedy in this matter is to disqualify" plaintiff's counsel and the firm because with "the egregiousness of the Florida Bar Rule violations," "the severity of the remedy matches that of the violations." *Id.* at 1373.

Markedly, this Court in *Bedoya* did not undergo any analysis regarding the defense counsel's standing to file the motion to disqualify the plaintiff's counsel and his firm and based its ruling on the indisputable assertion that "the Court is empowered to grant relief to the extent necessary to protect the integrity of proceedings before it.". *Id*. at 1357. This affirms that the standard here is not whether the movant "stands in the shoes" of a current or former client, but rather whether the conflict of interest involves representation of someone other than the movant and where it is such "as clearly to call in question the fair or efficient administration of justice." *Boca Raton Regional Hospital, Inc. v. Williams*, 230 So. 3d 42, 45 (Fla 4th DCA 2017).

Similar to the Florida Bar violations in *Bedoya*, Akerman is exposing Defendant to liability by representing the Akerman Clients and perpetuating the outstanding conflict. When Akerman undertook representation of both Defendant and the current Akerman Clients the firm knew or should have known that their interests were adverse. Akerman is a law firm of experienced commercial litigators and currently represents forty-four (44) insurance carriers in seventeen (17) active cases that involve the same exact accident involving a claim to the exact secondary

payments in the instant action. This impermissible dual representation is precisely the type of behavior Rule 4-1.7, Florida Bar Rules of Professional Conduct, sought to prohibit. Similar to this Court's ruling in *Bedoya*, Akerman's violation of (and disregard for) Rule 4-1.7 of the Florida Bar Rules warrants "the severity of the remedy." *Bedoya*, 861 F. Supp. 2d at 1373. As such, Akerman has violated Rule 4-1.7, Florida Bar Rules of Professional Conduct, and should be disqualified.

### B. Disqualification of Akerman Is Appropriate Pursuant to Rule 4-1.9, Florida Bar Rules of Professional Conduct

Akerman should be disqualified from representing Defendant in this litigation as a result of the firm's prior representation of Akerman Clients, pursuant to Rule 4-1.9. That rule, which governs conflict of interests with former clients, provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

**(a)**     represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

**(b)**     use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

**(c)**     reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar 4-1.9.[7] In order to disqualify counsel under this rule, a party must show that: "(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption the confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest to the former client was the same or substantially related to the matter in which it represented the former client." *State Farm Mut. Auto. Ins. Co. v. K.A. W.*, 575 So. 2d 630, 633 (Fla. 1991) (holding that the two-pronged test applies under Rules

---

[7] Rule 4-1.9 allows representation in substantially related matters where the former client has given "informed consent." However, there are certain conflicts that cannot be waived such as the one present in this case. *See The Florida Bar v. Feige,* 596 So.2d 433, 435 (Fla. 1992) (holding that when a conflict of interest inherent in a representation is so fundamental it cannot be condoned by a client, even with full disclosure); *see also The Florida Bar v. Scott,* 39 So. 3d 309 (Fla. 2010) (noting that "[s]ome kinds of conflicts of interest cannot be waived by a client" in holding that conflict at issue was un-waivable).

Regulating the Florida Bar); *see also U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities*, No. 12-81311-CV, 2013 WL 12082739, *4 (S.D. Fla. Sept. 6, 2013) (disqualifying counsel under two-pronged test where counsel had advised former client on transactions at issue in litigation); *Ford v. Piper Aircraft Corp.*, 436 So. 2d 305,307 (Fla. 5th DCA 1983) ("the former client must show that the matters embraced in the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."). Both elements are present here and <u>Akerman</u> should be disqualified as a result.[8]

It is important that the plaintiff is aggrieved. A party generally lacks standing to seek disqualification where there is no privity of contract between the attorney and the party claiming a violation of the Rules.  However, the Rules authorize opposing counsel to raise the issue. Comments to R. Regulating Fla. Bar 4-1.7. The Florida Supreme Court has noted that the "[c]omments to the Rules of Professional Conduct indicate that under certain circumstances someone other than the client may seek disqualification"—e.g., "where a conflict 'is such as clearly to call in question the fair or efficient administration of justice.'" *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d at 632 (quoting Comments to Rule 4-1.7); *see also Boca Raton Regional Hospital, Inc. v. Williams,* 230 So. 3d 42, 44 (Fla 4th DCA 2017).

In this case, there can be no reasonable dispute that Defense counsel represented the Other Akerman Clients in actions arising from violations of the MSP Law. Akerman made an appearance in each of the cases delineated in **Exhibit B**. In fact, Akerman drafted several motions raising similar arguments for the Other Akerman Clients.[9] Further, in *MSP Recovery Claims Series LLC v. Farmers Insurance Exchange*, Case Nos. 2:17-cv-2522-PLA and 2:17-cv-2559-PLA, D.E. 265 (C.D. Cal. July 28, 2020), Akerman performed an in-depth analysis of Farmers' exposure during

---

[8] Where one lawyer in a firm is prohibited from representing a client under Rule 4-1.9, the entire firm is disqualified as well. *See* R. Regulating Fla. Bar 4-1.10.

[9] *See* D.E. 49, at 5, 13-14 (raising the pre-suit demand letter defense); *Nat'l Gen. Assurance Co., et al.*, Case No. 1:20-cv-24051-AMC, ECF No. 25, at 16-17 (same); *MGA Ins. Co., Inc.*, Case No. 1:20-cv-21624-MGC, ECF No. 54, at 14-15 (same); *Amer. Nat'l Gen. Ins. Co., et al.*, Case No. 1:20-cv-24077-CMA, ECF No. 24, at 16-17 (S.D. Fla. Dec. 29. 2020) (same); *MSP Recovery Claims, Series LLC, v. United Services Auto. Assoc.*, Case No. 1:20-cv-21530-DPG, D.E. 18, at 7, 14-15 (S.D. Fla. July 22, 2020) (alleging that the "alleged injury [is not] traceable to these three [d]efendants" and raising the pre-suit demand letter defense); *Nat'l Continental Ins. Co., et al.*, Case No. 1:20-cv-24136-KMW, ECF No. 31, at 13 (arguing the injuries are not traceable to the defendant); *Markel*, Case No. 1:20-cv-24063-AMC, ECF No. 29, at 4, 15-16 (same and pre-suit demand argument raised).

data matching, which charted the distribution of its damages. *See* **Exhibit H**, Amended Special Master's Order RE Data Matching in *Farmers*.

Akerman also had multiple e-mail correspondences and telephone conferences with Plaintiff concerning settlement negotiations that must have been communicated to the Other Akerman Clients. There is an irrefutable presumption that confidences were shared during those communications. *See Young v. Achebauch*, 136 So. 3d 575, 583 (Fla. 2014) ("A party seeking disqualification under rule 4-1.9 does not have to demonstrate actual prejudice to the former client as a result of the subsequent representation because the existence of an attorney client relationship gives rise to an irrefutable presumption that confidences were disclosed.") (internal citations omitted). There was clearly an attorney-client relationship.

"Matters are 'substantially related' for the purposes of this rule [Rule 4-1.9] if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." *Philip Morris USA Inc. v. Caro*, No. 4D16-2416, 2016 WL 7118833, *3 (Fla. 4th DCA Dec. 7, 2016) (citing R. Regulating Fla. Bar 4-1.9 comment); *see also Commodity Futures*, 2013 WL 12082739 at *4 (for an action to be substantially related, the matter "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved"). The matters in the instant case involve the same exact accident for a claim to the exact secondary payments and involve Akerman's representation of the Other Akerman Clients – primary payer responsibility for accident-related treatment Plaintiff's Assignors' incurred on behalf of specific overlapping Enrollees. Matters in the instant case touch on the same accidents for which the Other Akerman Clients likewise issued policies covering Defendant's insureds. Thus, the Court need only determine whether Akerman and the former Akerman Clients may potentially have adverse interests in this case.

Here, Plaintiff has alleged that Defense counsel's Other Akerman Clients are jointly and severally liable for the accident-related medical items and services paid by Plaintiff's Assignors pursuant to the MSP Law. It is conceivable, and perhaps even likely, that Defendant and the Other Akerman Clients will be pointing fingers at each other, with each seeking to establish that the other party is subject to some or all of the liability. This scenario leads to at least the possibility that information disclosed by Akerman in the course of the attorney-client relationship with Defendant could be used to support a position contrary to the Other Akerman Clients. It is

12

that very possibility that should cause this Court to conclude that Akerman must be disqualified from further participation in this case.

### C. Disqualification of Akerman Is Appropriate Pursuant to Rule 4-1.8(g), Florida Bar Rules of Professional Conduct

Rule 4-1.8(g), Florida Bar Rules of Professional Conduct provides as follows:

Settlement of Claims for Multiple Clients. --A lawyer who represents 2 or more clients is **prohibited** from participating in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure must include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

[E.S.] Akerman's joint representation of numerous primary payers wreaks havoc with the settlement process. Mediation and settlement have progressively become more important and studies show that upwards of 99 percent of cases will settle without a jury trial.[10] However, Akerman's joint representation of payers who are jointly and severally liable makes settlement impossible; not just because this creates a logistical nightmare, but because Akerman is enjoined from engineering a global settlement by Rule 4-1.8(g).[11]

As in *Bedoya*, the impact on the settlement process is of particular importance. The adverse impact on the settlement process was one of the reasons that this Court held it was necessary to act: "The Court finds that although the specific statement at issue did not occur in proceedings before the undersigned, that statement has so affected the administration of the current action that a remedy is warranted. 'It is a given that federal courts enjoy a zone of implied power incident to their judicial duty.'" *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990) aff'd sub nom. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The Court's inherent power is "an implied power squeezed from the need to make the court function. It is power necessary to the exercise of all others . . . and

---

[10] *See* Scott Silverman, *The Ever Decreasing Jury Trial Rate*, Daily Business Review June 4, 2018.
[11] Plaintiff has provided Defense counsel and the Akerman Clients a settlement letter to settle **all** cases. Defense counsel and the Akerman Clients' direct conflict with one another make settlement impossible. Akerman's joint representation of the Akerman Clients gives rise to a violation of Rule 4-1.8(g), as Akerman's reaching a global resolution on behalf of one client will result in it taking on the liability of the Other Akerman Client. *See* **Exhibit J**, Settlement Letters sent to Akerman.

governed not by rule or statute but by the control *necessarily* vested in courts to manage their own affairs." *Bedoya* 861 F. Supp. 2d 1346, 1356 (S.D. Fla. 2012).

Plaintiff does not suggest disqualification lightly. Plaintiff is the real victim here. The harm joint representation causes has been brought to light by recent settlements in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.* Case No. 2015-1946-CA-01, where the Plaintiff's affiliates have settled with a primary payer at less than statutory damages with a full reservation of rights to seek the additional damages against third party insurers who are also primary payers. Akerman's simultaneous representation of numerous primary payers makes this approach, which is the only sensible one, impractical if not impossible. Disqualification is necessary in order to preserve the integrity of the legal process.

The multiple, simultaneous representation of adverse parties is continuing. Unlike the typical disqualification where joint representation is a historical event, here, Akerman continues to represent adverse parties with ineluctable damage to Plaintiff and to the efficient administration of justice. It is the continuous, on-going nature of this conflict that requires disqualification under Rule 4-1.16(a)(1) as well: "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if … the representation will result in violation of the Rules of Professional Conduct or law." Here, the conflict of interest is manifest. The Florida Supreme Court in *the Florida Bar v. Moore*, 194 So.2d 264, 269 (Fla. 1966) described that conflict succinctly: "[A] lawyer represents conflicting interests…when it becomes his duty, on behalf of one client, **to contend for that which his duty to another client would require him to oppose**… [E]xcept in exceptional circumstances...an attorney may not represent conflicting interests in the same general transaction, no matter how well-meaning his motive or however slight such adverse interest may be. **The rule in this respect is rigid**[.]" (emphasis added). Counsel's continuous representation of the Defendant and the Other Akerman Clients will wreak havoc with the settlement and mediation process.

### D. Disqualification of Akerman Is Appropriate Due to An Appearance of Impropriety

There is clearly, at the very least, an appearance of impropriety - in the form of an undermining of the loyalty and trust upon which an attorney-client relationship is based - that requires Akerman's disqualification from representing Defendant in this litigation. *See Rentclub, Inc. v. Transamerica Rental Finance Corp.,* 811 F. Supp. 651, 654 (M.D. Fla. 1992) (finding that

"even the appearance of impropriety may, under appropriate circumstances, require prompt remedial action from the court… [and] any doubt is to be resolved in favor of disqualification"); *see also Baybrook Homes, Inc. v. Banyan Construction & Development, Inc*., 991 F. Supp. 1440, 1444 (M.D. Fla. 1997); *see, e.g., McPartland v. ISI Inv. Services, Inc.*, 890 F. Supp. 1029 (M.D. Fla. 1995) (disqualifying a law firm under Florida law for its prior representation of plaintiffs, current representation of defendant, and substantial relationship to the present issues).

The Eleventh Circuit in *In re: Finkelstein* has held that the standard for motions to disqualify is based on the state's local rules governing professional conduct, including judicial decisions interpreting those rules. *See In re: Finkelstein*, 901 F.2d 1560, 1564-65 (11th Cir. 1990). While the current Florida Rules of Professional Conduct do not contain an express provision prohibiting the appearance of impropriety, Florida law clearly retains this requirement. *McPartland*, 890 F. Supp. at 1030. The Florida Supreme Court has upheld the appearance of impropriety standard, and because federal courts must base their standard for disqualification on the rules of the state, as interpreted by that state's judicial decisions, it follows that the appearance of impropriety standard is still viable in Florida. *See id.*; *see also Bhd. Mut. Ins. Co. v. Nat'l Presto Indus., Inc.*, 846 F. Supp. 57 (M.D. Fla. 1994).

In the instant case, there is an unassailable appearance of impropriety. Since the inception of Akerman's representation, almost every filing and responsive document by Defendant has been nearly identical to the filing and responsive document by Akerman in the same related matters involving the Other Akerman Clients.[12] The fact that Defense counsel has mimicked nearly every document that has been produced in the matters involving the Other Akerman Clients cannot be ignored and lends itself to the reasonable inference that confidential information has or will be passed from Akerman to Defendant and vice versa. As stated by the Supreme Court of Florida, "[o]ur legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *State Farm Mut.,* 575 So. 2d at 632. Clearly, Akerman has an informational advantage because of the confidences gained during the representation of the Akerman Clients, which Akerman can use to Defendant's detriment.

---

[12] Generic and nearly identical responses have been provided by Defendant in response to all civil remedy notices that have been received. Plaintiff attaches to this Motion **Exhibit I**, which represents a sample of Defendant's Responses to the Civil Remedy Notices.

Additionally, Defense counsel has engaged in a concerted scheme to defraud the Medicaid and Medicare programs by failing to provide Plaintiff pertinent information that would facilitate the coordination of benefits process, resulting in millions of dollars of unwarranted payments by Medicaid and Medicare.[13] Defendant and the Other Akerman Clients have been substantial financial beneficiaries of Akerman's stonewall tactics and has facilitated Defendant and the Other Akerman Clients' ongoing fraudulent practices by evading their statutory and contractual obligations to submit primary payer information to Plaintiff and to pay or reimburse Plaintiff. Indeed, the Honorable John M. Walker of the U.S. Court of Appeals for the Eleventh Circuit recognized this in the *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*,[14] oral argument and stated:

> The primaries are not paying primary. They're waiting and they – and they – and the secondaries pay – make the payment and then the primaries are not stepping up after those payments are made to reimburse. They are waiting and there's – it's obviously, from an economics perspective, to their advantage to do that, put it off as long as possible and have the lawsuits come in and as limited way as possible, and that's why what your client is doing is problematic from their perspective because its aggregates these claims and goes after the – after the primary reimbursements on mass, if you will…
>
> So without the primaries paying, just so I'm – I'm trying to understand this from a economics perspective, without the primaries paying, the cost then are shifted to the tax payers and through – through the Medicare system, MAO system and so forth. If the primaries come in and pay, then the tax payers are relieved of this risk to the extent of the primaries obligations.

Honorable John M. Walker, Jr. of the U.S. Court of Appeals in *MSP Recovery Claims Series LLC v. Ace,* Case No: 18-12139, 18-12139 2020 WL 5365978, transcript at pp.10-1:14-21 (11th Cir., September 10, 2020).

The Eleventh Circuit Court of Appeals has recognized that primary payers are "putting off as long as possible" their primary payer obligations for their financial gains. Defense counsel has

---

[13] 42 U.S.C. § 139u-6 created the Medicaid Integrity Program ("MIP"). The purpose of the MIP is to combat fraud, waste, and abuse. 42 U.S.C. § 1396u-6(d)(1). Through MIP, the secretary of CMS is charged with training state officials on policies and procedures for ensuring the integrity for the Medicaid program. 42 U.S.C. § 1396u-6(b). To hold states accountable for actively recovering overpayments, CMS requires the individual states to refund the federal portion of any overpayments made. 42 C.F.R. § 433.316(a).

[14] In *Ace*, the Eleventh Circuit of Appeal agreed with Plaintiff on all issues but still Akerman continues to delay the production of mandated information.

been complicit in this fraudulent business practice since Akerman has utterly disregarded the red flags indicating fraud, waste, and abuse by the Defendant and the Other Akerman Clients.[15] Akerman has assisted Defendant and the Akerman Clients in conduct known to be fraudulent by consistently failing to provide Plaintiff essential information that it is legally entitled to. *See Feige*, 596 So. 2d at 433 (finding attorney to have violated disciplinary rules by assisting client in conduct known to fraudulent by failing to reveal the fraud to the affected person). Rather than end the relationship with Defendant and the Other Akerman Clients, Akerman has chosen to look the other way and allowed Defendant and the Other Akerman Clients to continue their fraudulent practices. Tellingly, insurance carriers that are not being represented by Akerman have agreed to data matching and have produced vital information to Plaintiff to settle claims. For the reasons discussed above, Akerman has clearly failed to avoid even the appearance of professional impropriety.

### E.   Disqualification of Akerman LLP Is Appropriate Pursuant to Rule 4-1.10, Florida Bar Rules of Professional Conduct

Lawyers are permitted to, and most often do, disclose to other lawyers in their firm information relating to a client of the firm, whether it be for advice, delegation of work, or otherwise.  R. Regulating Fla. Bar 4-1.6 cmt. (2010). To protect clients from hazards inherent in said authorized exchange of information, the Florida Bar created Rule 4-1.10. Pursuant to Rule 4-1.6(a), Florida Bar Rules of Professional Conduct, while lawyers are associated in a firm, none of them are permitted to knowingly present a client when any one of them practicing alone would be prohibited from doing so under Rule 4-1.7 or 4.1-9. "The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one (1) lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owned by each lawyer with whom the lawyer is associated." R. Regulating Fla. Bar 4-1.10 cmt. (2010). As Akerman is

---

[15] On December 24, 2020, Plaintiff filed a complaint in *MSP Recovery Claims, Series LLC et al. v. 21st Century Centennial Ins. Co. et al*., Case No. 2020-027660-CA-02 (Fla. 11th Cir. Ct. 2020) (the "RICO Complaint"). The RICO Complaint allege that Defense counsel, and the Other Akerman Clients committed numerous acts of racketeering by knowingly providing incomplete or misleading information related to government payers to avoid primary payment, which were then paid directly or indirectly from government funds.

17

prohibited from representing Defendant by either Rule 4-1.7 or 4-1.9 or both, all attorneys of Akerman LLP should be disqualified under Rule 4-1.10(a), Florida Bar Rules of Professional Conduct.

## **CONCLUSION**

Akerman should be disqualified from representing Defendant in this litigation as a result of its current and prior representation of the Other Akerman Clients. This simultaneous representation of multiple defendants who are taking adverse positions to each other makes a mockery of the legal process and necessarily brings the settlement process to a screeching halt. Akerman received confidential information from the Other Akerman Clients and provided legal advice related to the exact matters at issue in this litigation. Plaintiff's motion to disqualify Akerman should be granted.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff hereby requests oral argument on this Motion. Removal of counsel requires an adequate evidentiary hearing. *Holland v. Tenebaum*, 360 So. 2d 493, 493 (Fla. 4th DCA 1978). "Disqualification cases require the court to make a factual determination that 1) there is proof that confidential information was actually disclosed and, 2) that this information gave the non- moving party an unfair tactical advantage." *Gutierrez v. Rubio*, *126 So. 3d 320* (Fla. 3d DCA 2013) (quashing and remanding disqualification order granted without an evidentiary hearing) (emphasis added); *see also C.f. City of Apopka v. All Corners, Inc.*, 701 So.2d 641, 644 (Fla. 5th DCA 1997) (holding that disqualification is required only when there is evidence that a law firm obtained confidential information). A moving party must present competent evidence proving the grounds for disqualification. *Health Care & Ret. Corp. of Am., 961 So. 2d at 1072* (remanding for an evidentiary hearing for additional evidence regarding "substantial relationship" between issues in current and former representations). *See Akrey v. Kindred Nursing Centers E., LLC*, 837 So. 2d 1142, 1145 (Fla. 2d DCA 2003) (quashing order disqualifying counsel that was based only upon affidavits filed by counsel, finding order departed from the essential requirements of law). Plaintiff believes it will be helpful for the Court to hear oral arguments from and address outstanding questions to both parties. Plaintiff estimates twenty (20) minutes per side for oral argument.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD-FAITH CONFERENCE

Plaintiff's counsel conferred with Akerman in good faith effort to resolve the issues raised in this motion but have been unable to do so.

Dated: February 16, 2021

Respectfully submitted,

**MSP RECOVERY LAW FIRM**
2701 S. Le Jeune Rd, 10th Floor
Coral Gables, Fl 33134
Tel: (305) 614-2222
Fax: (866) 582-0907

By: /s/ *John H. Ruiz*
John H Ruiz, Esq.
Fla. Bar No. 928150
serve@msprecoverylawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically using the CM/ECF filing system on February 16, 2021, on all counsel or parties of record.

/s/ *John H. Ruiz*
John H Ruiz, Esq.